CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

KEVIN J. BARRY (CABN 229748)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6840
    FAX: (415) 436-7234
    Email: kevin.barry@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FANY REANOS MORENO, <br><br> Defendant. | Case No. 24-CR-0554 WHO <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Hearing Date: February 5, 2026 <br> Hearing Time: 1:30 PM <br><br> Hon. William H. Orrick |

**INTRODUCTION**

The defendant, Fany Moreno, stands before the Court following her guilty plea to Counts One and Two of the captioned Indictment charging her with Possession with Intent to Distribute Fentanyl and Possession with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). The government submits this sentencing memorandum to inform the Court that it has no objections to the Presentence Report and to recommend that the Court sentence Defendant to a term at the low end of the Guidelines range for the offense of conviction, or 70 months, followed by a term of 36 months of supervised release.

## DEFENDANT'S OFFENSE CONDUCT

On July 26, 2024, Defendant Moreno was on pretrial release for selling fentanyl in San Francisco and was wearing an ankle monitor. PSR ¶¶ 10, 45. This did nothing to dissuade her from continuing to commute into the city to sell narcotics to drug addicts. Likewise, her history of prior arrests for this same conduct—there are nine recounted in the PSR—served no deterrent. PSR ¶¶ 35, 38-46, 49.

In fact, the Defendant not only continued selling drugs, she devised an ingenious solution to the problem of scale. Moreno employed a motorhome to serve as a "walk-up window" for fentanyl sales and parked it just outside the Tenderloin. PSR ¶¶ 8-11. This gambit proved highly successful, as officers who were alerted to the presence of this vehicle observed 40 people in line, waiting to be served, and when the Defendant was arrested on August 7, 2024, she admitted having $60,000 in cash at her residence. PSR ¶ 16.

When she was arrested, Defendant had driven into San Francisco from her house in Oakland, and she was pulled over at Van Ness just North of Market Street. PSR ¶ 15. In a backpack in her car, officers found a variety of different drugs: 516.7 gross grams of methamphetamine, 223.6 gross grams of fentanyl, 46.2 gross grams of cocaine base, 22.2 gross grams of heroin, and 16.2 gross grams of cocaine. PSR ¶¶ 17, 23.

## SENTENCING GUIDELINES CALCULATION

The base offense level provided in the Presentence Report (PSR) is 30, which applies to the converted drug weight for the combination of the controlled substances found in Defendant Moreno's backpack at the time of her arrest.

a. Base Offense Level:                                                                 30
   U.S.S.G. § 2D1.1(a)(5)
   (more than 1kg and less than 3kg of
   converted drug weight)

b. Acceptance of Responsibility:                                                       -3
   U.S.S.G. § 3E1.1(a),(b)

c. Adjusted Offense Level:                                                             27

The Probation Officer correctly determined that the Defendant merits a criminal history calculation of I, as she has a host of prior drug and other arrests, but just one conviction for accessory. PSR ¶¶ 35-36.

With an adjusted offense level of 27, this results in a range of 70-87 months.

## SECTION 3553(A) FACTORS

The factors listed under 18 U.S.C. § 3553(a) direct the Court to impose a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The key factors in this case are the Guidelines range for the offense, 3553(a)(4), the nature and circumstances of the offense and the history and characteristics of the defendant, 3553(a)(1), and the need for deterrence, 3553(a)(2)(B). These factors indicate that a sentence at the low end of the Guidelines range, or 70 months, is appropriate in this case.

The Guidelines indicate that a prison term of 70-87 months is proper where a drug distribution offense falls within the "heartland" of such cases. *Rita v. United States*, 551 U.S. 338, 351 (2007). The defense will likely argue that a number of factors indicate that the Court should vary downward significantly, and the Probation Officer has recommended a variance of nearly 50%. Significant departures from the Guidelines range require significant justifications, however. *United States v. Gall*, 522 U.S. 38 (2007) ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.").

Some of the bases for variance are already accounted for in the Guidelines, such as the Defendant's lack of criminal convictions. The 70 to 87-month range is based on the Defendant's classification in the lowest criminal history category. Others are not, including the extraordinary nature of the drug market in the Tenderloin, recent efforts to address this crisis by "fast tracking" the lowest-level dealers through the courts, and a history of below-Guidelines sentences for Section 841(a)(1) offenses in this district, particularly those committed by individuals struggling with their own addictions.

However, the effect of any factors supporting a potential variance is countered by the nature of the Defendant's conduct. The brazenness of Defendant Moreno's drug trafficking is remarkable. Few other defendants have been caught wearing an ankle monitor while dealing drugs, particularly when that monitor was a condition for bail for prior drug arrests, with another condition being a stay away order from the area where the latest sales took place. Even more remarkable was the Defendant's use of a motor home to increase her sales volume. *See* PSR ¶¶ 7-13.

The PSR indicates that through counsel, the Defendant claims that she began selling drugs to pay off a debt to the people who helped bring her to the United States. PSR ¶ 53. She was told that she would be getting a legitimate job, but she turned to selling drugs to repay the debt. *Id.* That statement is unreliable. While it is undoubtedly an accurate report from counsel of information provided by the Defendant, it is counsel's statement, not the Defendant's. Further, the statement suggests some level of coercion—there were "payment demands," PSR ¶ 53—but it does not actually state that the Defendant was forced into the drug trade, as opposed to repaying the cost to come to the United States through non-criminal employment.

Moreover, there are no details about the amount of the debt. The PSR indicates that Defendant Moreno came to the United States in 2019. PSR ¶ 54. She began selling drugs—and making considerable money—that same year. In 2019, Defendant was arrested selling drugs in San Francisco twice. PSR ¶¶ 38-39. She did not have much money on hand at the time of those arrests, but she had significant quantities of drugs, which are quickly converted to cash. In 2020, she was arrested twice as well, and during the random times she was stopped, she not only had drugs, but thousands of dollars of on her person. PSR ¶¶ 40-41 ($2,882; $1,460). When she was arrested in 2021, she was caught with over a thousand dollars, and in her 2022 arrest, she had over two thousand dollars, plus a large stash of drugs. PSR ¶¶ 35, 43. The year 2023 also featured two arrests, with Defendant Moreno holding even more money—over ten thousand dollars. PSR ¶ 44 ($9,441 and $1,222). Finally, when she was arrested in 2024, she had roughly $60,000 in cash at her residence. PSR ¶ 16.

Assuming for the sake of argument that Defendant Moreno's claim of indebtedness is accurate, the lack of information about the amount of the debt is important, because she does not explain how her years in the drug trade failed to pay it off. This enables the Defendant to rely on a suggestion that she trafficked drugs because of coercion, and not simply because it was lucrative. Here, however, the Court can credit instead the accuracy of the statement she made after her arrest—she was selling drugs to make money. PSR ¶ 16.

The Court is quite familiar with the nature of the offense in this case, as the sales of fentanyl, methamphetamine, and other drugs have devastated this community, particularly in the Tenderloin. In 2024, the last year of Defendant Moreno's activity, 635 people died from a drug overdose in San

Franisco, with 70% of them from fentanyl.  *See* https://www.sf.gov/data--preliminary-unintentional-drug-overdose-deaths; https://abc7news.com/post/national-fentanyl-awareness-day-what-is-san-franciscos-strategy-tackle-crisis-400-overdoses-2024/16281158/.  These grim numbers understate the problem, because the overdose deaths would be significantly higher but for the widespread availability and use of naloxone (Narcan) kits.  *See* https://californiaopioidresponse.org/outcomes/naloxone-distribution-project-data/.  Defendant Moreno was well aware of this reality, because she dealt with her customers face-to-face.  *See also* PSR ¶ 15 (describing a search of the Defendant's car when she was arrested in this case) ("A backpack was located, which was found to contain a digital scale, empty plastic bags, gloves, masks, Narcan pouches, suspected fentanyl, suspected methamphetamine, suspected cocaine base, suspected cocaine, and suspected heroin.").

  With respect to deterrence, a significant sentence is necessary both for specific and general deterrence.  The PSR reports that the nine arrests, the court orders to stay out of the Tenderloin, and even the ankle monitor did nothing to stop Defendant Moreno from selling dangerous drugs to addicts.  In fact, the lack of accountability may have emboldened her, as she significantly ramped up her trafficking and increased her revenue with the use of the motorhome.  She had dozens of people literally lining up to purchase fentanyl and methamphetamine from her, resulting in tens of thousands of dollars in income.

  A significant sentence for a dealer as open and brazen as Defendant Moreno is necessary to deter others from following her example and getting into the drug trade.  To this point, she has taught that a person can deal drugs in the Tenderloin and not only get away with it, but can enrich themselves considerably.  There must be a counter to that message, and a sentence within the Guidelines would accomplish that goal.

  At the same time, a sentence at the low end of the Guidelines range would be appropriate.  Defendant Moreno indicated a willingness to accept responsibility and to plead guilty relatively early in the case.  Further, she has performed well during the period of deferred sentencing.

//

//

//

# CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court sentence Defendant Fany Moreno to a term at the low end of an adjusted offense level of 27 and a CHC of I, or 70 months, followed by a term of three years of supervised release, a $100 special assessment, and that it order forfeiture of the proceeds of her drug sales.

DATED: January 30, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/ *Kevin J. Barry*

KEVIN J. BARRY
Assistant United States Attorney