JODI LINKER
Federal Public Defender
DANIEL P. BLANK
Senior Litigator
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Daniel_Blank@fd.org

Counsel for Defendant REANOS MORENO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR 24–0554 WHO |
| Plaintiff, | **DEFENDANT'S SENTENCING REPLY MEMORANDUM** |
| v. | **Court:** Hon. William H. Orrick |
| FANY REANOS MORENO, | **Date:** February 5, 2026 |
| Defendant. | **Time:** 1:00 p.m. |

## ARGUMENT

The government, in its sentencing memorandum, questions the claim of Defendant Fany Reanos Moreno appearing in the Final Presentence Report that she was coerced into selling drugs in order to repay the smugglers who, with the false promise of legitimate employment, brought her and her elder daughter here to the Bay Area to escape persecution in Honduras. *See* Dkt. 46 at 4; *see also* PSR 53. The government does not express any doubt that this dynamic routinely occurs, and is in fact all too common among refugees, especially females, from throughout Latin America.[1] Nevertheless, the government notes the lack of specificity here regarding exactly how much money Ms. Reanos owed the smugglers and their local drug trafficking associates. *See* Dkt. 46 at 4.

The reason for the lack of specificity is that the debt owed by Ms. Reanos was a moving target. Although Ms. Reanos was initially told in 2019 that she owed several thousand dollars for transporting her and her daughter here, that number quickly increased when she was fronted the drugs to sell as the means to start repaying that debt. Of course, virtually all of the resulting proceeds were claimed by the drug suppliers and very little was counted toward what she initially owed. Moreover, every time Ms. Reanos was arrested, she was held personally responsible for any proceeds and unsold drugs seized by law enforcement, and that was also added to her debt. This includes drugs and drug trafficking proceeds that Ms. Reanos was required to keep at her residence in order to protect suppliers from being caught with them, such as the $60,000 found in this case. *See* PSR ¶ 16. Ms. Reanos quickly lost track of exactly how much she owed and was directed by the suppliers, who were

---

[1] *See, e.g.,* U.S. Dep't of State, Office to Monitor Trafficking in Persons, *Key Trafficking Issues in the Western Hemisphere Region* (June 2024), *available at* https://www.state.gov/wp-content/uploads/2024/08/24-02934-TIP_Factsheet-Western-Hemisphere-Region_508-Accessible-8.13.2024.pdf (last checked Jan. 30, 2026) ("Traffickers also exploit many victims in forced criminality. Organized crime groups, including gangs and illegal armed groups, exploit girls in child sex trafficking, force children into street begging, forcibly recruit or use child soldiers, and coerce and threaten young men and women to transport drugs, commit extortion, act as lookouts, or commit acts of violence, including murder. Organized crime groups target groups of migrants unable to enter a country due to border restrictions or awaiting asylum decisions, including at the U.S.-Mexico border."); *see also, e.g.,* Luz Estella Nagle & Juan Manuel Zarama, *Taking Responsibility Under Human Trafficking Law and Colombia's Venezuelan Immigration Crisis,* U. MIAMI INTER-AMERICAN L. REV. 1, 63 (2022) ("The hook to attract and trap vulnerable Venezuelan women and young girls is to offer them what they want and desperately need. Their vulnerabilities make them susceptible to an array of tricks, lies, and deceptions. The most prevalent means of recruitment is to promise Venezuelan migrants and refugees decent jobs and permits to reside in Colombia, often with false promises of work, only to then be forced to sell drugs.")

DEFENDANT'S SENTENCING REPLY MEMO
*REANOS MORENO*, CR 24–0554 WHO

deliberately vague about the accounting, simply to keep selling until she was told she could stop. And as a young single mother, standing 4' 11" with an eighth-grade education from Honduras, Ms. Reanos was not in a position to refuse. This approach is overtly intended to keep vulnerable refugees like Ms. Reanos working in indefinite forced peonage. *See* fn.1 *supra.* With the support of Jose Cristobal Amaya, Ms. Reanos was able for a time, between June 2023 and April 2024, to make repayments on her accumulated debt without selling drugs. PSR ¶ 53. (Her lack of any arrests during that exact time period strongly corroborates this claim. *See id.* ¶¶ 44-45.) However, following his suicide during her pregnancy, Ms. Reanos did not see any way to avoid resuming this activity until her arrest in August 2024. PSR ¶ 53.

The government also points to the truthful (though incomplete) statement of Ms. Reanos after her arrest in the instant case "that she was selling drugs in order to make money since she was pregnant" as somehow belying her claim that she was coerced into this activity. Dkt. 46 at 4 (citing PSR ¶ 16). However, as the government has been repeatedly advised since the start of this case, sincere fear of reprisal against Ms. Reanos and her family by the smugglers and their local associates has kept her from specifically naming them to the authorities, even though she did acknowledge for example that she was storing the $60,000 for them. *See* PSR ¶ 16; *see also* Dkt. 45 at 2. It is due to her natural and understandable fear of reprisal that some of this information was conveyed through counsel rather than directly from Ms. Reanos, though the government apparently seeks to raise some other inference. *See* Dkt. 46 at 4.

Finally, Ms. Reanos understands the harm that her actions caused the community, and she will address this during her allocation. Specifically, even though Ms. Reanos did what she thought she needed to do so that she and her daughter could survive, other lives were likely ruined and perhaps even lost due to the drugs that she sold, and she accepts full responsibility for that. In combination with the other factors discussed in her opening sentencing memorandum—including the successful completion of all goal in her approved Deferred Sentencing Plan and the available of relief from deportation if she receives a non-custodial sentence in this case—it is respectfully submitted that the Court should impose upon Ms. Reanos a term of imprisonment of "time served" followed by three years supervised release. *See* Dkt. 45 at 1-7 & Atts. A-B.

## CONCLUSION

For the aforementioned reasons, the Court should sentence Ms. Reanos to a term of imprisonment of "time served" to be followed by three years supervised release.

Dated: January 30, 2026

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

/S
DANIEL P. BLANK
Senior Litigator