JODI LINKER
Federal Public Defender
Northern District of California
LISSET M. PINO
DANIEL P. BLANK
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:       Daniel_Blank@fd.org


Counsel for Defendant REANOS-MORENO


IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** CR 24–00554 WHO |
| Plaintiff, | **DEFENDANT FANY REANOS-MORENO'S NOTICE OF MOTION AND MOTION FOR BAIL PENDING APPEAL** |
| v. | |
| FANY REANOS-MORENO, | **Court:**          Courtroom F, 15th  Floor |
| Defendant. | **Hearing Date:**  March 10, 2026 |
| | **Hearing Time:**  1:30 p.m. |

**TO:  CRAIG H. MISSAKIAN, UNITED STATES ATTORNEY;
       KEVIN JAMES BARRY, ASSISTANT UNITED STATES ATTORNEY**

PLEASE TAKE NOTICE that at 1:30 p.m. on March 10, 2026, or as soon thereafter as counsel may be heard, defendant Fany Reanos-Moreno, by and through counsel, will move this Court under 18 U.S.C. § 3143 and Criminal Local Rule 47-2 for an order releasing her to bail pending appeal. Ms. Reanos-Moreno's motion is based upon the accompanying memorandum of points and authorities, declaration, and exhibits; relevant statutory provisions and case law; the files and records in this case; and such argument as the Court may allow at any hearing on the motion.

DEFENDANT FANY REANOS-MORENO'S NOTICE OF MOTION AND MOTION FOR BAIL PENDING APPEAL
*REANOS-MORENO*, CR 24–00554 WHO

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................i

Table of Authorities ..................................................................................................................ii

Federal Cases..........................................................................................................................ii

INTRODUCTION .....................................................................................................................1

BACKGROUND .......................................................................................................................2

      A.     Background & Charges..........................................................................................2

      B.     Initial Arrest and Release on Bond ........................................................................3

      C.     Informal Deferred Sentencing Agreement...............................................................3

      D.     Final Presentence Report .....................................................................................3

      E.     Sentencing..........................................................................................................4

ARGUMENT.............................................................................................................................6

  I.     Legal Standard ..........................................................................................................6

  II.    Ms. Reanos-Moreno is neither a flight risk nor a danger to the community, and her appeal is not for the purpose of delay. ...........................................................................7

  III.   This appeal presents substantial questions likely to result in a reduced sentence for Ms. Reanos-Moreno. ......................................................................................................9

      A.     Using incorrect JSIN data violated Ms. Reanos-Moreno's Due Process right to be sentenced based on relevant and accurate information. ...................................9

      B.     The district court committed legal error in its application of 18 U.S.C. § 3553(a)(6). ..........................................................................................................10

      C.     These errors are likely to result in a reduced sentence. .....................................11

CONCLUSION ........................................................................................................................13

# TABLE OF AUTHORITIES

**Federal Cases**

*Chapman v. United States*,
    500 U.S. 453 (1991) ................................................................................................. 4

*Gall v. United States*,
    552 U.S. 38 (2007) ................................................................................................. 13

*Koon v. United States*,
    518 U.S. 81 (1996) ................................................................................................. 13

*Pepper v. United States*,
    562 U.S. 476 (2011) ................................................................................................. 9

*United States v. Alvarado-Martinez*,
    556 F.3d 732 (9th Cir. 2009) ................................................................................... 9

*United States v. Brewster*,
    116 F.4th 1051 (9th Cir. 2024) ................................................................................ 9

*United States v. Garcia*,
    340 F.3d 1013 (9th Cir. 2003) ................................................................................. 7

*United States v. Handy*,
    761 F.2d 1279 (9th Cir. 1985) ....................................................................... *passim*

*United States v. Harper*,
    374 F. App'x 124 (2d Cir. 2010) ........................................................................... 11

*United States v. Miller*,
    753 F.2d 19 (3d Cir. 1985) .................................................................................... 11

*United States v. Price*,
    618 F. Supp. 2d 473 (W.D.N.C. 2008) ................................................................ 7, 8

*United States v. Saeteurn*,
    504 F.3d 1175 (9th Cir. 2007) ............................................................................... 10

*United States v. Valencia-Barragan*,
    608 F.3d 1103 (9th Cir. 2010) ............................................................................... 10

*United States v. Vanderwerfhorst*,
    576 F.3d 929 (9th Cir. 2009) ................................................................................. 10

**United States Sentencing Guidelines**

U.S.S.G. § 2D1.1 ..................................................................................................... 11, 12

U.S.S.G. § 5K1.1 ......................................................................................................... 12

U.S.S.G. § 6A1.3  ...................................................................................................................... 9

**Federal Rules and Statutes**

18 U.S.C. § 3143 ......................................................................................................... *passim*

18 U.S.C. § 3145 ............................................................................................................. 1, 5, 7

18 U.S.C. § 3553 ......................................................................................................... 1, 9, 10, 11

18 U.S.C. § 3624 .................................................................................................................. 13

18 U.S.C. § 3632 .................................................................................................................. 13

18 U.S.C. § 3661 .................................................................................................................... 9

Fed. R. App. Proc. 40................................................................................................................ 13

Fed. R. App. Proc. 41 ............................................................................................................... 13

**INTRODUCTION**

Defendant Fany Reanos-Moreno was charged in the above-captioned case in October 2024. Dkt. 1. On February 5, 2026, the district court imposed a sentence of 30-months, with a voluntary self-surrender date set for April 6, 2026. Ms. Reanos-Moreno now files this motion seeking bail during the pendency of her appeal to the Ninth Circuit.

Ms. Reanos-Moreno easily meets the requirements for bail pending appeal. First, she is not a flight risk or a danger to the community. 18 U.S.C. § 3143(b)(1)(A). Judge Orrick already found as much at sentencing, when he held that mandatory remand was not required. *See* 18 U.S.C. § 3145(c) (requiring detention after sentencing unless "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community"); Ex. A (Sentencing Transcript) at 25-26.

Second, Ms. Reanos-Moreno's appeal presents substantial issues. As discussed below, due to an error by Government counsel, the PSR cited Judiciary Sentencing Information (JSIN) data for a higher offense level than applicable. At sentencing, Judge Orrick relied on this data—the only data he had—in imposing sentence. Ex. A at 20-21. Had Judge Orrick been provided the correct data, he would have seen a significant increase in the number of defendants who received a non-custodial sentence—the precise sentence that Ms. Reanos-Moreno was seeking. Thus, basing Ms. Reanos-Moreno's sentence on JSIN data for a different offense level violated her due process right to be sentenced based on accurate and relevant information. It also violated 18 U.S.C. § 3553(a)(6), which requires that courts consider unwarranted sentencing disparities before imposing sentence.

Finally, success on appeal would result in a reduced sentence to a term of imprisonment that is shorter than the total time that Ms. Reanos-Moreno can expect to serve while her appeal is pending.

For these reasons, Ms. Reanos-Moreno submits she is entitled to release on bail pending appeal, and she respectfully asks this Court to order her release on the same conditions under which she has been released without incident since 2024.

DEFENDANT FANY REANOS-MORENO'S NOTICE OF MOTION AND MOTION FOR BAIL PENDING APPEAL
*REANOS-MORENO*, CR 24–00554 WHO

## BACKGROUND

A.  Background & Charges

Fany Reanos Moreno, age 33, was born and raised in severe poverty in Honduras. PSR ¶¶ 51-52. Ms. Reanos-Moreno's family owned a small grocery stand. *See* Dkt. 45 Att. B at 1. For years, armed men from notorious transnational gang Mara Salvatrucha (MS-13) demanded that Ms. Reanos-Moreno's family pay a tax for operating their business and that her brother join the gang, threatening to kill them if they refused. *See id.* When Fany and her family rejected the gang's demands and made several reports to the Honduran police, MS-13 murdered two family members. *Id.*

In 2014, Ms. Reanos-Moreno fled to Spain. PSR ¶ 54. Her partner, Christopher Aplicano, took their young daughter, Yilian, and moved to a different part of Honduras. *Id.* In 2019, Ms. Reanos-Moreno attempted to return to Honduras, but the danger from MS-13 had not abated, and she ultimately paid smugglers to bring her and Yilian[1] to the Bay Area, where her sister Sonia was already living. *See* Att. B at 2; *see also* PSR ¶ 53. The smugglers promised Ms. Reanos-Moreno that a legitimate job was awaiting her in the Bay Area, but when she arrived, they told her that she had to sell drugs in order to repay them. PSR ¶ 53; Dkt. 45 at 2-3. Ms. Reanos-Moreno was kept in "enforced peonage, never … able to overcome the debt that she owed." Ex. A at 14; PSR ¶¶ 38, 53. Ms. Reanos-Moreno's partner, Christopher, attempted to come to the U.S. to help her, but he died attempting the crossing. *Id.* ¶¶ 53, 55. Ms. Reanos-Moreno was subsequently diagnosed with depression. PSR ¶ 58.

Ms. Reanos-Moreno was forced to continue drug dealing activities continued through June 2023, when she met and fell in love with Jose Cristobal Amaya, who helped her make repayments to the smugglers without having to sell drugs. *Id.* ¶¶ 39-44, 53. Tragically, in April 2024, Jose committed suicide by shooting himself in her presence, while she was pregnant with their child. *Id.* ¶¶ 53, 56. Alone again, profoundly depressed, and in even more dire financial straits with a second child on the way, Ms. Reanos-Moreno resumed selling drugs. *Id.* ¶¶ 7-15, 45-46, 49, 58.

---

[1] Yilian has since returned to Honduras to live with her paternal grandparents. PSR ¶ 53.

B. <u>Initial Arrest and Release on Bond</u>

On August 8, 2024, Ms. Reanos-Moreno was arrested by state authorities. *Id.* ¶¶ 7-15, 45-46, 49, 58. She was subsequently released on an ankle monitor, then arrested by federal authorities on October 24, 2024. PSR at 1, ¶¶ 46, 53. On October 25, 2024, Ms. Reanos-Moreno made an initial appearance before this Court, on an indictment charging her with two counts of Possession with Intent to Distribute Controlled Substances (fentanyl and methamphetamine, respectively). Dkt. 5. That same day, Ms. Reanos-Moreno was granted pretrial release on conditions, including home detention and an ankle monitor. Dkt. 5-6. At a subsequent bail review hearing with the benefit of a post-bail report by U.S. Pretrial Services, Ms. Reanos-Moreno's release was confirmed on the same conditions. Dkt. 8-9. Days after her initial appearance in federal court and release on conditions, Ms. Reanos-Moreno gave birth to her younger daughter, Maria Jose Amaya. PSR ¶ 53.

During the pendency of her federal case, the conditions of her pretrial release were amended to grant her a curfew in lieu of home detention. *See, e.g.,* Dkt. 36. She has remained in compliance with all of her conditions of release, without any violations. PSR ¶¶ 4, 91.[2]

C. <u>Informal Deferred Sentencing Agreement</u>

On June 13, 2025, the defense moved for a deferred sentencing following an open guilty plea and presented an individualized success plan to the Court. PSR ¶¶ 2, 60; *see also* Dkt. 31 & Att. A [hereinafter "Deferred Sentencing Plan"]. The proposed plan included specific goals, approved by U.S. Pretrial Services, for maintaining stable housing, vocational training, behavioral healthcare, parenting classes, childcare, and public benefits. *See* Deferred Sentencing Plan at 1-4.

Upon no objection from the government, an open plea was entered on June 26, 2025, and sentencing was deferred to February 5, 2026, with the Court encouraging Ms. Reanos-Moreno to do her best to meet those goals prior to sentencing. Dkt. 45 at 4. All goals set forth in the Deferred Sentencing Plan have been met or exceeded. *See id*. at 4, 5-6; Ex. A (Sentencing Transcript) at 20.

D. <u>Final Presentence Report</u>

The Final Presentence Report calculated a base offense level of 30 using the gross weights of

---

[2] In March 2025, a problem with the ankle monitor's transmitter was detected, but after a hearing there was no finding of tampering. PSR ¶ 5.

DEFENDANT FANY REANOS-MORENO'S NOTICE OF MOTION AND MOTION FOR BAIL PENDING APPEAL
*REANOS-MORENO*, CR 24–00554 WHO

drugs in this case. PSR ¶ 23. This was because the Government erroneously failed to provide the Probation Officer "laboratory reports to confirm the net weight of the involved drugs." *Id*. at fn. 1. Defense counsel objected, arguing that the base offense level should be calculated using the net weight of the drugs, not the gross weight. *See Chapman v. United States*, 500 U.S. 453, 459 (1991). If the Government was not able to provide the net weight, defense counsel suggested that the base offense level could be lowered from 30 to 28 to account for any packaging. The Government did not agree to this proposed resolution. Ex. A at 5. The Final PSR noted that defense counsel's objection remained outstanding. PSR at page 23.

Probation recommended a downward variance to 36 months on a combination of grounds, including that Ms. Reanos-Moreno "reported being manipulated and forced to sell drugs upon arrival to the United States," and that "she ha[d] been compliant with U.S. Pretrial Services supervision" since her arrest. PSR ¶ 91; *see also* PSR Sentencing Recommendation at 1-2.

In its sentencing memorandum, the Government requested a sentence of 70 months, the low end of the Guidelines rante. Dkt. 46 at 1. By contrast, given Ms. Reanos-Moreno's successful completion of her deferred sentencing plan, the defense requested a non-custodial sentence of "time served." Dkt. 45 at 2. Defense counsel also highlighted a newly-received letter from Ms. Reanos-Moreno's immigration lawyer, which stated that the imposition of a custodial sentence in this case would "almost certainly" bar Ms. Reanos-Moreno from obtaining withholding of removal from the United States. Dkt. 45, Att. B at 2.

E. <u>Sentencing</u>

At sentencing, the district court heard arguments from the parties on the sole remaining objection to the PSR—namely, the fact that Ms. Reanos-Moreno's guidelines range was calculated using the gross net of the drugs found in her possession. Ex. A at 3; Dkt. 45 at 3 fn. 5. In a reversal of its position, the Government agreed to the defense's initial proposal and stipulated to a base offense level of 28. *Id*. at 8. This meant that, after a 3-point reduction for acceptance of responsibility, the final offense level (FOL) was reduced to 25 (rather than 27). *Id*. at 8-9; PSR ¶ 32. The resulting advisory guideline range was concomitantly reduced to 57-71 months (rather than 70-87 months). Ex. A at 9; PSR ¶ 68.

The parties were given an opportunity to argue regarding the appropriate sentence. As relevant here, Government counsel submitted that there was "not a shred of evidence to support" Ms. Reanos-Moreno's claim that she was selling drugs because she had been threatened by smugglers. Ex. A at 11. In response, defense counsel noted that many of the relevant facts were corroborated by the asylum application Ms. Reanos-Moreno filed in 2019, well before the instant offense. *Id*. at 14, 18.

Ultimately, the Court "accept[ed] the representations that … MS-13 caused [Ms. Reanos-Moreno] to flee Honduras" and that "smugglers were extorting money" from her. *Id*. at 20. The Court also commended Ms. Reanos-Moreno's good work on pretrial release, noting that she had "done very well" on her deferred sentencing plan. *Id*. However, the Court stated that its decision to grant deferred sentencing in this case did not constitute a promise that successful completion of the sentencing plan would result in a noncustodial sentence. *Id*. at 15-16. The Court raised concerns regarding the quantity of drugs sold and the seriousness of the offense. *Id*. at 19-20. The Court expressed that it would be varying down from the guidelines range, then, referencing the PSR, stated, "I was interested that the JSIN average was 37 months and that the median was 33 months." *Id*. at 21 (citing PSR ¶ 86).

But the JSIN data included in the Final PSR had been calculated using the old Guidelines range, not the new range the Government had just stipulated to. *See* PSR ¶ 86. Defense counsel objected to the reliance on this JSIN data, noting that it was for the wrong offense level. Ex. A at 21 ("That JSIN data is referring to offense level 27, and Your Honor has calculated it to be a 25."). The Court stated that it assumed the JSIN data for FOL 25 would be "slightly less than that." *Id*. The court imposed a sentence of 30 months of custody followed by a three-year term of supervised release. *Id*. at 21-22.

Due to the nature of Ms. Reanos-Moreno's offense, her detention after sentencing was mandatory. *See* 18 U.S.C. § 3143(b)(2). However, an exception permits release if "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community," and "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. §§ 3143(a)(1), 3145(c)). In Ms. Reanos-Moreno's case, the Court found the "exceptional reasons" requirement met and granted a

voluntary surrender date of April 6, 2026. Ex. A at 25-26. The Government raised no objection. *Id*. at 25.

The Court advised Ms. Reanos-Moreno of her right to appeal. *Id*. at 24-25. In response to inquiry by defense counsel, the Court advised that any motion for bail pending appeal should be brought before the magistrate court in the first instance. *Id*. at 26. This motion follows.

## ARGUMENT

### I.    Legal Standard

To qualify for release pending appeal, a defendant must satisfy 18 U.S.C. § 3143(b)(1). Section 3143(b)(1) mandates release pending appeal if two conditions are met. First, the Court must find "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(b)(1)(A). Second, the Court must find

> (B) that the appeal is not for the purposes of delay and raises a substantial question of law or fact likely to result in—
>
> (i) reversal,
> (ii) an order for new trial,
> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1)(B); s*ee also United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985).

This second requirement incorporates two separate inquiries. The first inquiry is whether the question to be presented on appeal has reached the requisite "level of merit": the question must be "substantial." *Handy*, 761 F.2d at 1280. The Ninth Circuit has clarified that a "substantial" question for the purposes of bail pending appeal is one that is "fairly debatable," meaning, one about which reasonable jurists could differ. *Handy*, 761 F.2d at 1283. This is not a stringent standard. *Id.* at 1280-83. A substantial question may be "new and novel," or "[i]t may present unique facts not plainly covered by the controlling precedents." *Id.* at 1281 (citation omitted).

Second, the statutory reference to issues that are "likely to result in" a noncustodial or reduced sentence instructs courts to consider the "type of question that must be presented." *Handy*, 761 F.2d at 1280. A defendant does not need to show a likelihood of success on appeal to present a substantial question. *Handy*, 761 F.2d at 1280-83. After all, "requiring the defendant to demonstrate to the district court that its ruling is likely to result in reversal [would be] tantamount to requiring the

district court to certify that it believes its ruling to be erroneous." *Id*. at 1281. Rather, the question is whether the issue the defendant will be raising on appeal is *of a kind* that, "if decided in the defendant's favor" could lead to a sentence that does not include a custodial term or that is substantially reduced. *Id*.; *see also United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003).

Thus, a court can determine that an issue is substantial and likely to result in reversal on appeal without finding that the underlying ruling was erroneous. *Handy*, 761 F.2d at 1281.

## II.    Ms. Reanos-Moreno is neither a flight risk nor a danger to the community, and her appeal is not for the purpose of delay.

That Ms. Reanos-Moreno is neither a flight risk nor danger to the community is beyond dispute. Indeed, the district court necessarily made this precise finding when it found that a mandatory remand was not required and granted a voluntary surrender date of April 6, 2026. *See* 18 U.S.C. § 3145(c) (requiring detention after sentencing unless "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community," under § 3143(a)(1)); Ex. A at 25-26. Such a finding was amply supported, and remains so now.

From the inception of the government's prosecution, Ms. Reanos-Moreno has been released on bail without incident. PSR ¶¶ 4, 91. As the U.S. Probation Office reported in Ms. Reanos-Moreno's PSR, she has "kept all court appearances, complied with conditions of pretrial release, and is not viewed as a flight risk or danger to the community." PSR Sentencing Recommendation at 3. The Government implicitly admitted that Ms. Reanos-Moreno is not a flight risk and does not pose a danger to the community when it did not object to the Court granting her voluntary surrender. Ex. A at 25.

Moreover, analogous cases support the determination that Ms. Reanos-Moreno is neither a flight risk nor a danger to the community. For instance, in *United States v. Price*, 618 F. Supp. 2d 473, 476 (W.D.N.C. 2008), the district court permitted a defendant who pled guilty to conspiracy to possess with intent to distribute methamphetamine to remain released on bond. *Id*. at 474. The defendant had been released on bond for over a year. *Id*. at 475. During this time, she had completed a short-term substance abuse treatment program and was responding well to medical treatment for her

depression. *Id*. at 474, 477.

Applying the criteria articulated in 18 U.S.C. § 3143(a)(2), which are similar, the Court found the defendant was not likely to flee or pose a danger to the community. *Id*. at 476-77. The Court noted that defendant had "extensive ties to the community," had no criminal record before the instant offense, and that her depression was being successfully treated with medication. *Id*. at 477. In addition, the recent birth of the defendant's child was found to "significantly diminish[]" the "risk of non-appearance." *Id*. at 477. Notably, the Court allowed her to remain released despite the existence of an alleged new law violation during her release. *Id*. at 474.

The circumstances of this case are strikingly similar to *United States v. Price*. Just like defendant Price, Ms. Reanos-Moreno pled guilty to a nonviolent drug offense. PSR ¶ 1. She has extensive ties to the community—Ms. Reanos-Moreno has been living in Oakland with her daughter, her sister, Sonia, and her two nieces since 2019. *Id*. ¶ 54. She has been released on bond since 2024, during which time she successfully completed her Deferred Sentencing Plan and received helpful counseling for depression. Dkt. 45 at 6-7; PSR ¶ 54.

If anything, the circumstances here show a decreased risk of flight. For one thing, Ms. Reanos-Moreno has not had any alleged new law violations during her release. But in addition, Ms. Reanos-Moreno has every incentive to remain in the United States. Winning her appeal and obtaining a noncustodial sentence on remand is the only way for Ms. Reanos-Moreno to continue pursuing lawful immigration status in the United States. Dkt. 45 at 6; *see also* Dkt. 45, Att. B. Ms. Reanos-Moreno needs this status so that she can remain in the same country as her young daughter, who is a U.S. citizen. PSR ¶¶ 53, 55; Dkt. 45 at 2. Ms. Reanos-Moreno thus has no incentive to flee. Not only that, as a practical matter, Ms. Reanos-Moreno has nowhere to flee to. Her remaining family is in Honduras, but Ms. Reanos-Moreno cannot return due to the significant threat to her safety posed by MS-13. Dkt. 45 at 8; PSR ¶ 51.

For all these reasons, Ms. Reanos-Moreno easily meets the requirements of § 3143(b)(1)(A). Furthermore, it is plain that Ms. Reanos-Moreno's appeal "is not for the purposes of delay." 18 U.S.C. § 3143(b)(1)(B). As discussed in detail below, the appeal presents multiple "substantial questions."

**III. This appeal presents substantial questions likely to result in a reduced sentence for Ms. Reanos-Moreno.**

Ms. Reanos-Moreno's appeal presents at least two "fairly debatable" issues that, if decided in her favor, would result in a significantly reduced or noncustodial sentence. *Handy*, 761 F.2d at 1283.

    A. <u>Using incorrect JSIN data violated Ms. Reanos-Moreno's Due Process right to be sentenced based on relevant and accurate information.</u>

The sentencing court's use of incorrect JSIN data violated Ms. Reanos-Moreno's right to be sentenced based on relevant and accurate information.

Although district courts have broad discretion to consider various kinds of information at sentencing, *see* 18 U.S.C. § 3661, it is well-established that that discretion "is subject to constitutional constraints." *Pepper v. United States*, 562 U.S. 476, 489 & n.8 (2011). Under the Due Process Clause, the information considered by the sentencing court must be "relevant" and "'[have] sufficient indicia of reliability to support its probable accuracy.'" *United States v. Alvarado-Martinez*, 556 F.3d 732, 734–35 (9th Cir. 2009) (citation omitted); *see also* U.S.S.G. § 6A1.3(a)).

The requirement that information be relevant is implicit in the due process framework. *See Alvarado-Martinez*, 556 F.3d at 734–35 (recognizing that information considered must also be "relevant."). For instance, in *United States v. Brewster*, the Ninth Circuit rejected a defendant's challenge to the sentencing court's use of JSIN data in imposing sentence. 116 F.4th 1051, 1060 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1148 (2025). The Ninth Circuit noted that § 3553(a)(6) "requires the sentencing court to consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" and "[t]he JSIN tool enables judges to fulfill this obligation." *Brewster*, 116 F.4th at 1060. The defendant in *Brewster* argued that JSIN data was insufficiently reliable—an argument the Ninth Circuit rejected because he did not identify any specific issues with the JSIN data in his case. *Id*. at 1061.

*Brewster*'s rejection of the defendant's challenge to the use of JSIN data, however, was premised on the Court's finding that such data was "highly relevant." *Id*. at 1060. Relevance was obvious in *Brewster*, as the JSIN data the Court used related to offenders sentenced under the same primary guideline, with the same final offense level and criminal history category as the defendant. *See id*. at 1055-56, 1057. But that basic requirement was not met here, where the district court

sentenced Ms. Reanos-Moreno based on sentencing data for offenders with a different—higher—offense level. Because the error was "demonstrably made [a] basis for the sentence," Ms. Reanos-Moreno's due process rights were violated. *See U.S. v. Vanderwerfhorst*, 576 F.3d 929 (2009); *see infra* at § III.C (discussing impact of the error on Ms. Reanos-Moreno's sentence).

At the very least, the district court's ruling presents a "fairly debatable" issue. As *Handy* recognized, a substantial question arises when a case "present[s] unique facts not plainly covered by the controlling precedents." *Handy*, 761 F.2d at 1281. Though *Brewster* held that JSIN data was sufficiently reliable for use in some cases, the Court did not hold that a district court may base its sentencing decision on JSIN data for an incorrectly calculated offense level. *Cf. Brewster*, 116 F.4th at 1060. A reasonable jurist could conclude that doing so violates the defendant's right to be sentenced based on accurate and relevant evidence. Thus, Ms. Reanos-Moreno's appeal presents a substantial issue.

B.  The district court committed legal error in its application of 18 U.S.C. § 3553(a)(6).

In addition, the district court's remarks at sentencing show that it wrongly construed and applied 18 U.S.C. § 3553(a)(6) in this case. *See United States v. Valencia-Barragan*, 608 F.3d 1103, 1108 (9th Cir. 2010); *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007).

Section 3553(a)(6) commands the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The text of the statute unambiguously instructs the sentencing court to focus on other defendants who are similarly situated to the defendant being sentenced. First, the statute permits the Court to look at other defendants "with similar records who have been found guilty of similar conduct." *Id*. Second, the statute instructs the Court to consider whether the sentence it plans to impose will create "unwarranted" sentence disparities with those defendants.

The district court here erred at the first step of this analysis. It did not look to defendants "found guilty of similar conduct"—it looked to defendants whose offense level was two points higher, which necessarily means their conduct was not similar, but rather significantly more serious. For instance, under the applicable section of the U.S. Sentencing Guidelines, a defendant's offense level will be increased by two levels if he possessed a dangerous weapon or used violence during the

course of the offense. *See* U.S.S.G. § 2D1.1(b)(1)-(2). Those defendants, whose offense level is two points higher, cannot be said to have committed "similar" conduct to that of Ms. Reanos-Moreno. In other words, because the district court did not have the correct JSIN data, it was not able to look at "defendants with similar records who have been found guilty of similar conduct" and consider "the need to avoid unwarranted sentence disparities" with *those* defendants. 18 U.S.C. § 3553(a)(6).

Though there is no Ninth Circuit caselaw covering this precise circumstance, as noted above, *Brewster* found that a judge who considers JSIN data for similarly situated defendants thereby fulfills his obligation to consider the need to avoid unwarranted sentence disparities under § 3553(a)(6). *Brewster*, 116 F.4th at 1060. A reasonable jurist could find that the inverse is true: A judge who considers JSIN data for defendants who are *not* similarly situated does *not* fulfill his obligations under § 3553(a)(6). *See United States v. Harper*, 374 F. App'x 124, 129 (2d Cir. 2010) (district court did not properly consider the need to avoid unwarranted sentencing disparities because it considered sentences imposed on others who were not "truly similarly situated"). Thus, the novel facts of Ms. Reanos-Moreno's appeal present a substantial issue. *See Handy*, 761 F.2d at 1281 (a question is substantial when it "present[s] unique facts not plainly covered by the controlling precedents.") (citation omitted).

C.  These errors are likely to result in a reduced sentence.

As noted above, under *Handy*, the next question is whether defendant has raised a type of issue that is likely to result in a noncustodial sentence, or a sentence that is shorter than the expected duration of the appeal. *Handy*, 761 F.2d at 1280; 18 U.S.C. § 3143(b)(iii)-(iv). To fulfill this prong, the defendant need not show that "the probability of reversal" is high. *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985) (cited approvingly in *Handy*, 761 F.2d at 1280); *see also Handy*, 761 F.2d at 1280 ("Congress did not intend to limit bail pending appeal to cases in which the defendant can demonstrate at the outset of appellate proceedings that the appeal will probably result in reversal"). Rather, the defendant need only show that the error raised was not harmless. *Id*.; *see also id*. at 1283-4 (engaging in harmless error analysis).

This requirement is met here: one of the primary reasons given for the sentence was the JSIN data for FOL27. As background, the PSR reported the JSIN data for FOL27 as follows:

> During the last five fiscal years (FY2020-2024), there were 773 defendants whose primary guideline was §2D1.1 and Methamphetamine was the primary drug type, with a Final Offense Level of 27 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 765 defendants (99%) who received a sentence of imprisonment in whole or in part, *the average length of imprisonment imposed was 37 month(s) and the median length of imprisonment imposed was 33 month(s).*

PSR ¶ 86 (emphasis added). After defense counsel objected that this JSIN data was for the wrong offense level, the district court expressly stated that it assumed that the JSIN data for offense level 25 would show "slightly" shorter custodial sentences. Ex. A at 21. It then imposed a 30-month sentence that was slightly shorter than the JSIN median of 33 months. *Id.*; PSR ¶ 86.

But the district court's assumption that the JSIN data for FOL25 would show "slightly" shorter custodial sentences was wrong. The JSIN data for FOL25 is as follows:

> During the last five fiscal years (FY2020-2024), there were 359 defendants whose primary guideline was §2D1.1 and Methamphetamine was the primary drug type, with a Final Offense Level of 25 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. *For the 342 defendants (95%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 40 month(s) and the median length of imprisonment imposed was 41 month(s).*

*See* Ex. B (FOL 25 JSIN data) at 2. In fact, the average and median length of imprisonment imposed goes *up* for offenders at FOL25. *See id.* A likely reason for this is that, when calculating the average and median length of imprisonment imposed, JSIN excludes defendants who received noncustodial sentences (such as probation). *Id.* ("For the 342 defendants (95%) who received a sentence of imprisonment in whole or in part…). And far more of those defendants were excluded at FOL25 than at FOL27.[3] In fact, had the district court been provided the JSIN data for FOL25, it would have seen *a 500% increase* in the number of offenders who received a non-custodial sentence—the precise

---

[3] JSIN skews imprisonment length data higher by excluding those defendants who received the shortest sentences. In addition to defendants who received noncustodial sentences, defendants who received § 5K1.1 departures for substantial assistance are not counted. Ex. B at 4. And far more of those defendants were excluded at FOL25 than at FOL27. For FOL27, data from the Sentencing Resource Counsel shows that 1% of offenders received a non-custodial sentence and 13% of defendants received a substantial assistance departure. Ex. C (FOL27 JSIN data) at 3. In total, 14% of these less-culpable offenders were excluded from the data. *Id.* But for FOL 25, nearly a quarter of defendants—24%—received a substantial assistance departure, and another 5% received non-custodial sentences. Ex. B at 3. In other words, nearly one third of defendants were excluded from JSIN's imprisonment length calculations for FOL25—which may be inflating the average and median length of imprisonment.

DEFENDANT FANY REANOS-MORENO'S NOTICE OF MOTION AND MOTION FOR BAIL PENDING APPEAL
*REANOS-MORENO*, CR 24–00554 WHO

sentence that Ms. Reanos-Moreno argued was appropriate.

That the district court relied on this incorrect JSIN data is clear from the Court's comments at sentencing, as well as the Statement of Reasons. *See* Ex. A at 20-21; Dkt. 54 at 3 (listing the need to avoid unwarranted sentencing disparities as one of the reasons for the sentence). Thus, the district court's reliance on this incorrect data cannot be dismissed as harmless.[4]

Additionally, if the Ninth Circuit were to grant Ms. Reanos-Moreno relief, any reduction in sentence would be "to a term of imprisonment less than the total time already served plus the . . . duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B)(iv). Importantly, though Ms. Reanos-Moreno received a 30-month sentence, she will not serve the full 30 months. With a good-time credit reduction of 15%, her term would be decreased to 25.5 months. *See* 18 U.S.C. § 3624(b)(1). With an additional reduction of nearly twelve months under the First Step Act, Ms. Reanos-Moreno can expect to serve approximately 13.5 months. *See* 18 U.S.C. § 3632(d)(4)(A).

On average, it takes approximately 13 months for the Ninth Circuit to resolve an appeal.[5] It takes another three weeks for the mandate to issue. *See* Fed. R. App. Proc. 41(b), 40(d)(1). Even assuming the district court ordered a reduction of only a few months on remand, if Ms. Reanos-Moreno were incarcerated pending her appeal, she would be unable to reap the benefits of a decision in her favor. Thus, the type of issue Ms. Reanos-Moreno has raised is likely to result in a sentence that would ultimately be shorter than the expected duration of her appeal. 18 U.S.C. § 3143(b)(iii)-(iv).

## CONCLUSION

For the reasons stated above, clear-and-convincing evidence establishes that Ms. Reanos-Moreno presents neither a risk of flight nor a danger to the community, and her appeal is plainly not

---

[4] Regardless of whether the district court's reliance on JSIN data for a different offense level is characterized as a procedural or substantive error, it plainly constituted an abuse of discretion. *See Koon v. United States,* 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law."); *Gall v. United States*, 552 U.S. 38, 51 (2007) ("selecting a sentence based on clearly erroneous facts" is an abuse of discretion).

[5] This estimate is derived from data provided by the U.S. Courts, for the 12-month period ending in September 2025. *See* U.S. Courts, Table B-4A, U.S. Courts of Appeals—Median Time Intervals in Months for Civil and Criminal Appeals Terminated on the Merits, p. 2, available at https://www.uscourts.gov/sites/default/files/document/jb_b4a_0930.2025.pdf

DEFENDANT FANY REANOS-MORENO'S NOTICE OF MOTION AND MOTION FOR BAIL PENDING APPEAL
*REANOS-MORENO*, CR 24–00554 WHO

13

taken for purposes of delay. In addition, Ms. Reanos-Moreno's appeal presents substantial questions that, if decided in her favor, will likely result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeals process." 18 U.S.C. § 3143(b)(1)(B)(i)-(iv). Accordingly, Ms. Reanos-Moreno respectfully submits that she is entitled to bail pending appeal and asks this Court to order her release subject to the same conditions on which she has been released since 2024.

Dated:      February 24, 2026                    Respectfully submitted,

                                                 JODI LINKER
                                                 Federal Public Defender
                                                 Northern District of California

                                                       /s/ *Lisset M. Pino*
                                                 LISSET M. PINO
                                                 DANIEL P. BLANK
                                                 Assistant Federal Public Defenders