**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FANY REANOS-MORENO,<br><br>Defendant. | Case No.  24-cr-00554-WHO (PHK)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR BAIL PENDING APPEAL**<br><br>Re: Dkt. 56 |

**INTRODUCTION**

On October 22, 2024, the grand jury returned an indictment charging Defendant Fany Reanos-Moreno with two counts of violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (along with aiding and abetting in violation of 18 U.S.C. § 2) for possession with intent to distribute fentanyl (Count One) and possession with intent to distribute methamphetamine (Count Two). [Dkt. 1].  On October 25, 2024, the Defendant appeared before the undersigned for her Initial Appearance. [Dkt. 5].  As a result of that hearing, the Court set conditions for Defendant's release upon bond pending trial in this matter. [Dkt. 6].  The conditions of Defendant's pretrial release were modified several times (including by stipulation) while this case was pending, but none of those modifications revoked Defendant's pretrial release. [Dkts. 17, 26, 30, 36, 39, 41].

At a change of plea hearing on June 26, 2025, Defendant pled guilty to Counts One and Two of the Indictment. [Dkt. 33].  The sentencing hearing before Judge Orrick was held on February 5, 2026. [Dkt. 48].  Defendant filed a Notice of Appeal with the Ninth Circuit on February 11, 2026. [Dkt. 51].  As discussed below, Defendant's appeal is directed to the sentence imposed in this case.

United States District Court<br>Northern District of California

United States District Court
Northern District of California

Now before the Court is Defendant's Motion for Bail Pending Appeal. [Dkts. 56, 57 (declaration in support of motion)]. This motion was originally noticed for hearing by Judge Orrick, but per the Parties' Stipulation dated March 3, 2026, the instant motion was renoticed for hearing and resolution by the undersigned. [Dkts. 63, 64 (Order Granting Stipulation)]. At the hearing, counsel for the Parties agreed that this motion is appropriately decided by the undersigned by this Order (and not by a Report and Recommendation).

The Government was granted an extension of time to file its opposition and filed its opposition. [Dkts. 81, 82 (Order Granting Extension of Time for Government to File Opposition)]. Defendant timely filed her reply brief. [Dkt. 83]. The Court heard oral argument on the instant motion on April 22, 2026. [Dkt. 84]. The Defendant was present and was represented by counsel. Pretrial Services was present but took no position on the merits of the instant motion. After reviewing the briefing and records in this case, and after hearing argument from counsel, the Court **GRANTS** Defendant's motion for the reasons set forth below and for the reasons stated on the record at the hearing in this matter, which are incorporated herein by reference.

**DISCUSSION**

In considering the instant motion, the Court is guided by several applicable legal principles. Under 18 U.S.C. § 3143(b)(1), a defendant convicted of a non-violent crime shall be detained pending appeal unless the defendant shows by clear and convincing evidence that: (1) she "is not likely to flee or pose a danger to the safety of any other person in the community if released; (2) . . . the appeal is not for purpose of delay; (3) . . . the appeal raises a substantial question of law or fact; and (4) . . . if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal" or a sentence that does not include a term of imprisonment. *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985); *see also* 18 U.S.C. § 3143(b)(1)(A)-(B).

Further, detention pending appeal is mandatory for a defendant (like Reanos-Moreno) convicted of a crime under the Controlled Substances Act for which the maximum sentence is more than ten (10) years, unless the Court finds "exceptional reasons why such person's detention would not be appropriate." *See* 18 U.S.C. § 3143(b)(2); 18 U.S.C. § 3145(c). "As to such offenders, Congress has imposed an additional condition: Persons subject to the 1990 Act are not eligible for

release unless 'it is clearly shown that there are exceptional reasons why[their] detention would not be appropriate.'" *United States v. Garcia*, 340 F.3d 1013, 1015 (9th Cir. 2003). The Ninth Circuit "emphasize[d] that in all cases governed by § 3145(c), the exception applies only where justified by exceptional circumstances. Hardships that commonly result from imprisonment do not meet the standard. The general rule must remain that conviction for a covered offense entails immediate incarceration. Only in truly unusual circumstances will a defendant whose offense is subject to the statutory provision be allowed to remain on bail pending appeal." *Id.* at 1022.

The Court first addresses the *Handy* factors in turn and then addresses the exceptional circumstances issues.

## I.     Risk of Flight and Danger to Safety of Another If Released

The Government does not argue that Reanos-Moreno would pose a danger to the safety of another if released.  [Dkt. 81 at 3 (arguing only risk of flight)].  Indeed, Reanos-Moreno was not convicted of a violent offense, she has no history of violence, and she has complied with the conditions of her pretrial release.  On the record presented, Defendant has shown by clear and convincing evidence that she does not pose a danger to the safety of any other person or the community if released.

The Government's primary argument here is that Defendant Reanos-Moreno is likely to flee if released pending appeal.  Defendant contends that she is not likely to flee if released pending appeal.

As an initial matter, Defendant argues that the issue of risk of flight was already decided in her favor in connection with her sentencing.  At the conclusion of the sentencing hearing, mandatory remand of Defendant would have been required under 18 U.S.C. § 3143(a)(1) unless the District Judge found that voluntary surrender was allowed due to exceptional circumstances under 18 U.S.C. 3145(c).  Here, Judge Orrick did not require mandatory remand and permitted Defendant to voluntarily surrender, based on a finding of exceptional circumstances.  *See* Dkt. 57-1 at 24-26. Defendant argues that, in order to make this finding, Judge Orrick necessarily found that Defendant had shown by clear and convincing evidence that she was not likely to flee.  [Dkt. 56 at 11]. Defendant argues that Judge Orrick's finding at the sentencing hearing is thus *res judicata* and

3

binding for purposes of this motion. [Dkt. 83 at 4]. For issue preclusion (or *res judicata*) to apply there must be a prior, final, appealable order. Issue preclusion prevents re-litigation of an issue "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1159 (9th Cir. 2002) (citations and internal quotation omitted) (brackets in original). Here, Defendant does not cite legal authority for the proposition that a district court's decision at the end of a sentencing hearing allowing voluntary surrender instead of mandatory remand, based on a finding of exceptional circumstances under § 3145(c), is a final appealable order. However, on February 17, 2026, Judge Orrick entered final Judgment in this case, which included an order that Defendant voluntarily surrender (and did not require immediate remand). [Dkt. 54]. Accordingly, there is merit to the argument that the final Judgment's ruling on voluntary surrender constitutes a final order such that issue preclusion applies to the finding of exceptional circumstances. This is a strong legal factor that the Court takes into account in reaching the conclusions herein.

Even if *res judicata* were not to apply, Defendant also argues that, at the sentencing hearing, the Government did not oppose voluntary surrender and, as a procedural matter, waived arguing likelihood of flight on this motion. [Dkt. 83 at 4]. While the sentencing hearing transcript is devoid of an express objection by the Government, a fair reading of the transcript indicates that the Parties and the Court incorporated by reference their earlier statements on the record regarding Defendant's conduct while on pre-trial release. The context here included the fact that the undersigned found (for pre-trial purposes) that there was insufficient showing of a risk of flight and the fact that Defendant did not abscond (but rather, as the record shows, performed quite well during her deferred sentencing period). In the context of the discussion of voluntary surrender at the sentencing hearing taken as a whole, it is not clear that the Government forfeited the opportunity to raise the risk of flight issue on the instant motion. "[T]he failure to raise an argument in a timely fashion is a forfeiture not a waiver." *Damiano v. Grants Pass School Dist. No. 7*, 140 F.4th 1117, 1152 n.17 (9th Cir. 2025) (citation and internal quotation omitted). On this motion, the Government believes it has the right to argue risk of flight. A "district court has discretion to reach forfeited issues." *Id.*

at 1152. Accordingly, based on the record presented, even if forfeiture were to apply (which is not clear from the record), the Court exercises its discretion and discusses the issues.

Finally, on the merits, the Court finds the Defendant has shown by clear and convincing evidence that she is not likely to flee. As noted, the undersigned previously found an insufficient showing of risk of flight and allowed Defendant release pre-trial on bond. During the months of pre-trial release, Defendant did not flee, did not fail to attend court hearings, and (as noted) performed quite well in compliance with her independent deferred sentencing plan. The Defendant has an infant child (born shortly after she was originally indicted) and flight would presume she would either abandon the infant or somehow attempt to flee with an infant (both of which are unlikely). *See United States v. Price*, 618 F. Supp. 2d 473, 476-77, 83 (W.D.N.C. Jan. 24, 2008) (on review of denial of release pending sentencing under § 3143(a)(2), fact of "Defendant's pregnancy and the recent birth of Defendant's child" led to conclusion that "the risk of non-appearance, if any, is significantly diminished" and court found "exceptional circumstances" warranting release under § 3145(c)). Indeed, similar to *Price*, Defendant was at a very advanced stage of her pregnancy when she first appeared before the undersigned and her infant was born shortly thereafter. The Court finds that the fact that Defendant has an infant child significantly diminishes the likelihood she would flee.

Defendant has attested to reasons why she left Honduras years ago and there is no indication she has the resources to attempt to flee in order to return there. Defendant's sister, with whom she has resided in the Bay Area, is local and provides further connection to this judicial district. In short, there are both familial and practical reasons why Defendant is not likely to flee. The many months during her pre-trial release when she did not flee (despite the same conditions existing then as now) indicate strongly that Defendant is not likely to flee pending appeal.

For all these reasons, Reanos-Moreno has shown by clear and convincing evidence that she is not likely to flee and does not pose a danger to the safety of any other person in the community if released.

//

//

5

United States District Court
Northern District of California

## II.     No Purpose of Delay

As to the second Handy requirement for granting bail pending appeal, there is no genuine dispute about whether Reanos-Moreno's appeal is for purposes of delay.  The Government does not argue that the appeal is purposes of delay.  *See* Dkt. 81 at 3-7 (only arguing risk of flight and substantial question of law).

## III.     Substantial Question

Reanos-Moreno argues that her appeal raises a substantial question of law: whether the presentation of incorrect JSIN data to the district court for purposes of sentencing resulted in a reversible error in the imposition of her sentence.  [Dkt. 56 at 13-14].

A substantial question is one that is "novel," "has not been decided by controlling precedent," or is "fairly debatable." *Handy*, 761 F.2d at 1282 and n.2 (quoting and adopting standard in *United States v. Miller*, 753 F.2d 19, 22-23 (3d Cir. 1985)).  "In short, a substantial question is one of more substance than would be necessary to a finding that it was not frivolous." *Id.* at 1283 (citations and internal quotation omitted).

Under 18 U.S.C. § 3553, a sentencing court is to take into account "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  The "JSIN tool enables judges to fulfill this obligation" to avoid unwarranted sentencing disparities. *United States v. Brewster*, 116 F.4th 1051, 1060 (9th Cir. 2024), *cert. den.* 145 S. Ct. 1148 (2025).  Here, the Pre-Sentence Report provided Judge Orrick with Judiciary Sentencing Information (JSIN) data.  It is undisputed that JSIN data for the wrong offense level was presented for consideration, and that specifically the provided JSIN data was for a higher offense level than was applicable to Defendant here.

Defendant argues that the proper JSIN data for the actual offense level applicable to Defendant would have shown that more persons at that offense level obtain non-custodial sentences as compared to persons at the improperly presented offense level.  [Dkt. 56 at 16].  Indeed, Defendant argues that the JSIN data for the proper offense level would show a 500% increase in the number of offenders who receive a non-custodial sentence, and thus argues that the error here was not harmless. *Id.*  Defendant argued for a non-custodial sentence and now argues that, with the

6

United States District Court
Northern District of California

proper JSIN data presented, that argument would have had more support in the record and therefore the proper JSIN data could materially alter the sentencing outcome here. The impact of a custodial sentence (which was imposed) versus the non-custodial sentence Defendant sought goes beyond the basic issue of incarceration, because a non-custodial sentence leaves a path for Defendant to continue to seek immigration status here in the United States (which she avers she is currently pursuing). *Id.* at 8, 12.

The JSIN data for the proper offense level indicates an average period of incarceration which is actually longer than the average length of custodial sentence for the persons at the offense level presented to the district judge. The Government argues therefore that the presentation of the admittedly incorrect JSIN data was harmless error at best, because had the proper JSIN data been provided, that would have demonstrated (and supported) a lengthier sentence, not a shorter sentence. Defendant argues that the lengthier average sentence for the proper offense level is a result of the fact that so many more people at that offense level are given non-custodial sentences, such that those persons who are sentenced to custodial sentence at that offense level have other circumstances which results in the longer terms on average. Defendant argues that this demonstrates that, because Defendant here does not have any such aggravating circumstances, had the proper JSIN data been provided to Judge Orrick, the likelihood of a non-custodial sentence would have increased. Defendant also argues that even though the average length of sentence for the proper offense level was higher, the greater number of persons receiving non-custodial sentences at that offense level could also have been argued as a basis for a further downward departure than was actually granted.

A district court is not required to find "that it believes its ruling[s] to be erroneous" to grant a motion for bail pending appeal. *Id.* at 1281; *see also United States v. Winsor*, 890 F. Supp. 2d 1257, 1259 (D. Or. 2012) ("The court need not find that its ruling was wrong, just that it is 'fairly debatable.'"). Accordingly, the undersigned makes no finding that there was an error in sentencing Defendant here. Rather, per the applicable legal standards for purposes of this motion, the Court concludes that Reanos-Moreno has raised issues on appeal that satisfy the "fairly debatable" standard.

//

## IV.   Favorable Ruling Is Likely to Result in Reversal

With respect to the fourth *Handy* prong, the Parties do not genuinely dispute that the issue on appeal, if determined favorably on Defendant's behalf, is likely to result in reversal and likely remand for re-sentencing. *See* Dkt. 81 at 3-7 (Government only arguing risk of flight and substantial question of law).

## V.   Exceptional Reasons

As discussed above, even if a defendant meets the general criteria for release pending appeal, Congress has imposed the additional "exceptional reasons" requirement for defendants (such as Reanos-Moreno) who have been convicted of a drug offense for which the maximum sentence is more than ten years.  The Ninth Circuit has provided guidance on this issue:

> Court decisions addressing and applying the "exceptional reasons" provision have expressed varying views . . . .  [A] wide range of factors may bear upon the analysis. By adopting the term "exceptional reasons," and nothing more, Congress placed broad discretion in the district court to consider all the particular circumstances of the case before it and draw upon its broad "experience with the mainsprings of human conduct."  While we offer some guidance today, we place no limit on the range of matters the district court may consider. Rather, the court should examine the totality of the circumstances and, on the basis of that examination, determine whether, due to any truly unusual factors or combination of factors (bearing in mind the congressional policy that offenders who have committed crimes of violence should not, except in exceptional cases, be released pending appeal) it would be unreasonable to incarcerate the defendant prior to the appellate court's resolution of his appeal . . . .  The district court's familiarity with the full record will enable it, when necessary, to undertake a searching and informed evaluation of all the circumstances of the case, a process that an appellate court would ordinarily be unable to undertake until after the appeal is completed. We reiterate that the factors we mention here are by no means exclusive.

*Garcia*, 340 F.3d at 1018-19, 1021 (citations omitted).

For the reasons discussed above, Defendant argues that Judge Orrick's decision at sentencing to allow Defendant to voluntarily surrender was based on his finding of exceptional circumstances here, and that therefore this constitutes *res judicata*.  As detailed above, while it is unclear whether the verbal ruling on exceptional circumstances at sentencing is by itself sufficiently final in order for issue preclusion to apply, Judge Orrick's Final Judgment certainly constitutes a final appealable judgment and that Judgment includes the ruling on voluntary surrender.  Where a court has issued a final appealable judgment, issue preclusion applies with regard to the issues decided therein, thus foreclosing reargument for policy issues concerning judicial economy among

other factors. *See, e.g., In re Lockard*, 884 F.2d 1171, 1174-75 (9th Cir. 1989) (setting forth § 27 of Restatement (2nd) of Judgments for issue preclusion standard). For these reasons and the reasons discussed above, even if issue preclusion were not to apply, this factor constitutes a strong factor supporting the existence of exceptional circumstances here.

As discussed above, Defendant has an infant child. In *Price*, the district court found exceptional circumstances warranting release under § 3145(c), based in part on the fact that the defendant there had an infant child. *See* 618 F. Supp. 2d at 476-77, 83. The fact that Defendant has an infant child not only demonstrates she is not likely to flee, that fact is further relevant to the existence of exceptional circumstances. Defendant argues that an uncontroverted developmental study demonstrates that "[m]aternal availability is particularly important within the first two years of life because of the infant's limited understanding of the reasons for maternal absence and the timing of her return." [Dkt. 83 at 7 (brackets in original), Attachment B (K. Howard et al., *Early Mother-Child Separation, Parenting, and Child Well-Being in Early Head Start Families*, Attach Hum Dev. at 2 (N.I.H. Jan. 2011))]. While in general a defendant's incarceration is inevitably impactful on their family, the period of Defendant's appeal overlaps with this "particularly important" period in her infant child's life. Further, the father of Defendant's child is deceased, which is a further circumstance indicating that separating mother from infant at this time pending her appeal would be exceptionally impactful.

Here, Defendant argues that she was coerced into her criminal activity by the traffickers who brought her from Honduras to the United States. [Dkt. 56 at 6]. Defendant argues that, but for this enforced "peonage," she lived a life free of crime prior to this time period and that her goal is to seek gainful employment now that she is apparently free from her smugglers. *Id*. "[O]ne exceptional circumstance that might justify release under § 3145(c) would be that the defendant's criminal conduct was aberrational . . . . Moreover, if the district court finds that the defendant led an exemplary life prior to his offense and would be likely to continue to contribute to society significantly if allowed to remain free on bail, these factors would militate in favor of finding exceptional reasons." *Garcia*, 340 F.3d at 1019. In support of this argument, Defendant emphasizes that she sought (and was granted) a deferred sentence so that she could develop and then implement

9

an independent plan to demonstrate her good behavior and prospects for rehabilitation while on pre-trial release prior to sentencing. That plan included specific goals including vocational training. [Dkt. 56 at 7]. During that time period, Defendant completed a haircutting course at a beauty academy. [Dkt. 83 at 5, Attachment A (certificate of completion)]. Defendant also argues that she was not convicted of a violent crime and poses no risk of danger to the community or others if released.

Defendant argues that the length of the sentence here (taking into account credits she may receive for good-time and "First Step Act"), as compared to the average length of time for the Ninth Circuit to resolve an appeal, are roughly equal. [Dkt. 83 at 7]. "The length of the prison sentence-both the maximum and the sentence imposed-may also be relevant, for several reasons . . . . [I]n such circumstance, the defendant could be forced to serve most or all of his sentence before his appeal has been decided. Incarcerating such a defendant immediately upon conviction could substantially diminish the benefit he would ordinarily receive from an appeal." *Garcia*, 340 F.3d at 1019. Defendant admitted at the hearing on this matter that whether or not she receives reductions in her sentence due to various credits is conditional and unknown at this point, but even without those credits she would serve a substantial part of her sentence before her appeal is resolved. This factor only slightly militates in favor of a finding of exceptional reasons here, because of its conditional nature.

As the Ninth Circuit has held, the determination of exceptional reasons is based on the totality of circumstances. No one factor discussed herein is dispositive. In addition to the specific factors enumerated herein, the Court notes that the undersigned has presided over Defendant's case during the pre-trial phase for the several months while she completed her deferred sentencing plan. During that time, Defendant has not been found in violation of her terms of release, and as noted, she has fully completed the goals set forth in her deferred sentencing plan. The Court has considered all the evidence and arguments presented and based on the entire record and materials presented in this matter, the Court **FINDS** that the combination of the totality of the circumstances demonstrate that exceptional reasons exist for Defendant's release pending bail.

In light of applicable legal standards, therefore, the Court **GRANTS** Defendant Reanos-Moreno's motion for bail pending appeal.  Defendant **SHALL** continue to abide by all conditions of release previously imposed by the Court.

## CONCLUSION

For the reasons stated on the record at the hearing and for the reasons as further stated herein, Defendant's Motion for Bail Pending Appeal is **GRANTED** on the terms and conditions as set forth herein.

This Order **RESOLVES** Dkt. 56.

**IT IS SO ORDERED.**

Dated: May 29, 2026

PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California

11